EDUCATION/INSTRUCCION,
INC., Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOP-
MENT et al., Defendants.

Civ. A. No. 77–518–C.

United States District Court,
D. Massachusetts.

June 21, 1979.

Andrew H. Good, Boston, Mass., for plaintiff.

Edward F. Harrington, U. S. Atty., Carolyn S. Grace, Asst. U. S. Atty., Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

In 1977 plaintiff filed this action seeking injunctive relief against the Department of Housing and Urban Development (HUD) and its Secretary, Patricia Roberts Harris. The action was brought pursuant to the Freedom of Information Act (FOIA), 5 U.S. C.A. § 552.

Plaintiff alleges that it has been denied access to significant portions of documents in the custody of the defendants and seeks to recover costs and attorney fees as well as access to those materials which have not yet been turned over to it. The jurisdiction of this Court is provided for in 5 U.S.C.A. § 552(a)(4)(B).

Plaintiff, Education/Instruccion, Inc., is a non-profit corporation engaged in civil rights research and advocacy activities concerning housing in Boston and other communities.

Boston Housing Authority (BHA) is an organization which operates a large low income housing program and in so doing uses funds received from HUD.

In 1975 HUD's Region I office of Equal Opportunity conducted a compliance review of BHA to insure that as a recipient of HUD assistance BHA was designing and implementing programs to promote equal opportunity for all persons as mandated by Title VI of the Civil Rights Act of 1964. Under HUD procedures, if the report reflected non-compliance, HUD's administrative enforcement process would operate to insure compliance.

In July and August of 1976 plaintiff requested disclosure of documents related to the compliance review. The requests were made in letters from plaintiff's Director, Patricia Morse, and plaintiff's legal assistant, Amy Totenberg to Edward Pollack, HUD's Acting Assistant Regional Administrator for Fair Housing Equal Opportunity (ARA). The letters, in pertinent part, requested copies of:

1. Findings and recommendations of the most recent Title VI compliance review of the Boston Housing Authority.

2. All correspondence between the Boston Regional Office of Equal Opportunity and the Boston Housing Authority since January 1, 1976, which relates to the Boston Housing Authority's status of compliance or non-compliance with Title VI of the Civil Rights Act of 1964.

3. All recommendations made since January 1, 1976 by the Boston Regional Office of Equal Opportunity to HUD Central Office with respect to enforcement of Title VI of the Civil Rights Act of 1964 as it applies to BRA.

The requests were denied in letters dated August 17, 1976, in which Mr. Pollack advised the plaintiff that pursuant to 5 U.S.C.A. § 552(b)(7) (hereinafter Section 7)[1] the document requested in item 1 was exempt from FOIA disclosure until such time as the Title VI administrative process had been exhausted and that under 5 U.S.C.A. § 552(b)(5) (hereinafter Section 5)[2] the documents set forth in items 2 and 3 were exempt from FOIA disclosure as inter-agency or intra-agency memoranda. On August 17 Mr. Pollack also informed plaintiff of its right to appeal the initial denial by HUD.

Plaintiff sent a letter of appeal to HUD's Assistant General Counsel for Finance and Administrative Law on September 4, 1976. As a result of that appeal the earlier decision was affirmed as to item 1. However, the Office of HUD's General Counsel reversed Mr. Pollack's decision as to item 2 and conceded that the category of documents set forth in item 2 were not within the exemption set forth in Section 5. The Regional Office was ordered to turn over all of the correspondence between HUD's Regional Office and the BHA but was allowed to delete those portions of the correspondence which quoted or revealed the contents of the exempt material set forth in item 1. As to item 3 the Regional Office was ordered to provide plaintiff with all correspondence between HUD's Regional Office and Control Office and reasonably segregable portions thereof which did not contain or reveal recommendations or opinions of HUD personnel. Plaintiff was also advised in the letter of decision that judicial review of the decision was available as provided in 5 U.S.C.A. § 552(a)(4)(B).

On November 18, 1976 Ms. Morse received twenty-two pages of documents with excisions.

In February, 1977 this action was commenced to enjoin HUD from continuing to withhold the undisclosed documents and excised materials which had been requested by plaintiff.

On May 5, 1977 the parties stipulated that HUD would provide plaintiff with a detailed justification for any allegations of exemption including an itemization which would correlate specific statements of justification with the corresponding portions of the requested documents.

Pursuant to that agreement, the supplemental affidavit of Edward Pollack was filed on June 7, 1977. The affidavit listed the documents which had been withheld in whole or in part and listed for each document the FOIA exemptions upon which each refusal to disclose was based. The affidavit also divided the documents into categories. Of the documents listed in the affidavit, nine documents which may be divided into three categories remain in issue in this case.[3] The three categories are:

1. Findings and recommendations contained in a preliminary investigative report resulting from a compliance review conducted by the Regional Office of Fair Housing and Equal Opportunity in 1975 pursuant to Title VI of the Civil Rights Act of 1964.

2. Correspondence between the Boston Regional Office of Fair Housing and Equal Opportunity and the BHA.

3. Intra-agency correspondence between the Regional Office of Fair Housing and Equal Opportunity and the Office of the Assistant Secretary for FH & EO at HUD headquarters.

The first category includes only document i which was withheld under an assertion of an exemption under Section 7(A) and/or

---

1. Section 7 provides in pertinent part that "investigatory records compiled for law enforcement purposes" are exempt from disclosure to the extent that their production would (A) interfere with enforcement proceedings, [or] (B) deprive a person of a right to a fair trial or an impartial adjudication.

2. Section 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency".

3. For purposes of this opinion, the Court adopts Mr. Pollack's numbering of the contested documents as documents i–ix.

7(B).[4] The second category includes documents ii-vi which were withheld only to the extent that they reveal the contents of document i or other portions of the compliance review and the third category includes documents vii, viii and ix portions of which have been withheld in reliance on an exemption under Section 5.[5] An exemption under Section 7 has also been asserted for documents vii and ix on the basis of references therein to the contents of the compliance review.

In October, 1977 HUD and BHA entered a compliance agreement which brought HUD's administrative enforcement process to its conclusion.

On September 8, 1978, plaintiff filed a motion for summary judgment. In October, 1978 plaintiff filed an affidavit in support of that motion attaching document viii in its entirety and portions of document i which plaintiff had acquired from a source other than the defendant.

On November 13, 1978, twenty-eight months after the original request for disclosure, and thirteen months after the execution of the compliance agreement, defendants filed a cross motion for summary judgment and attached seven pages of document i and documents ii-vi in their entirety to it. Defendants stated that since the law enforcement proceedings against BHA had ended with the compliance agreement HUD was no longer asserting any Section 7 exemption for these documents. The only materials which remain undisclosed therefore are the excised portions of documents vii, and ix, as to which the defendants continue to assert an exemption under Section 5, and the remaining portions of document i as to which defendants first asserted a Section 5 exemption in November 1978.[6]

Defendants argue that the only issue now before the Court is whether they should be enjoined from withholding the few portions of documents which remain undisclosed pursuant to their assertion of exemption 5 and that all other issues have been mooted by disclosure.

Plaintiff counters with the argument that if the court rules that defendants were never entitled to withhold the documents for which exemptions under Section 5 or 7 were asserted, plaintiff may be awarded costs and attorney fees incurred from the time the materials should have been made available without litigation until the time when those documents were disclosed.

■ I rule that the controversy between the parties as regards the materials claimed to be exempt under Section 5 or 7 has not been mooted by the eventual disclosure of most of the documents. If the documents were wrongfully withheld as plaintiff argues, plaintiff may be awarded costs and reasonable attorney fees pursuant to 5 U.S.C.A. § 552(a)(4)(E) in the court's discretion.

In disclosing those documents, which it had argued were exempt under Section 7 defendants have not conceded that plaintiff was entitled to disclosure from the date of the original request. Defendants merely maintain that since the law enforcement proceedings upon which the Section 7 exemption was based were at an end, they were no longer claiming the exemption. Thus for purposes of plaintiff's claim for costs and attorney fees, there remains a controversy as to whether defendants were ever entitled to claim an exemption under Section 7.

### SECTION 7

Document i consists of the findings and recommendations portion of HUD's report on BHA compliance with Title VI of the Civil Rights Act of 1964. It is exempt

---

**4.** *See*: note 1, *supra*.

**5.** *See*: note 2, *supra*.

**6.** The findings portion of the compliance review consists of pages 31–42 of that review. The recommendations portion of the compliance review is the last Section of the review which, according to the table of contents, commences at page 44. The entire findings portion is now available to plaintiff, seven pages having been acquired from defendants and the remainder from another source. The recommendations portion which commences at page 44 of the compliance review remains undisclosed.

under Section 7 only if it was compiled for law enforcement purposes and if its production would interfere with law enforcement proceedings or deprive a person of a fair trial or an impartial adjudication. This court's decision as to the propriety of a section 7 exemption for document i will be determinative as to documents ii-vi because the excised portions of documents ii-vi were withheld only because they revealed the contents of that same compliance review.[7]

Plaintiff argues that the compliance review is the result of routine monitoring by HUD and that it is not an investigatory record compiled for law enforcement purposes within the meaning of Section 7. Plaintiff further argues that even if the compliance review is an investigative record, its release would not interfere with enforcement proceedings nor would it deprive a person of the right to a fair trial or impartial adjudication. Plaintiff concludes therefore that the compliance review is not entitled to the protection of Section 7.

■ This Court need not decide whether the compliance review was compiled for law enforcement purposes because even if it was, it is not exempt under Section 7.

In *NLRB v. Robbins & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), the Supreme Court ruled that in enacting Section 7 in 1966 Congress intended to shield the government's case by exempting witnesses' statements from disclosure prior to enforcement proceedings, and further ruled that the purpose of the section was not changed when it was amended to its present form in 1974.

Plaintiff has presented affidavits in support of its motion for summary judgment which establish that BHA had received a copy of the compliance review (including document i, in its entirety) as early as March, 1976 and that portions of the document had been filed with a master in the Housing Court and thus were available for public perusal. There is no way therefore that the release of document i to plaintiff would have harmed the government's case against the BHA because the adverse party already had access to the document.

Furthermore, disclosure of the findings and recommendations within document i would not have deprived the BHA of a fair trial or impartial adjudication. This Court agrees with plaintiff's submission that document i amounts to no more than "charges" against the BHA and that no great significance should be attributed to its release.[8]

In addition, prejudicial publicity has little significance in administrative proceedings. In *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court upheld a Wisconsin statute under which an agency board which had gathered the investigative information was also allowed to serve as an adjudicator of the matter. If an investigator may also sit as an adjudicator surely someone who might have seen the investigative report may do so.

I am mindful that the Supreme Court has clearly stated that the exemptions set forth in FOIA are to be narrowly construed so as to implement the overall legislative policy of disclosure to the public. *Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). I rule that defendants were not entitled to an exemption under Section 7.

*SECTION 5*

■ Defendants have also asserted an exemption under Section 5 for documents i, vii, viii and ix. This Court declines to consider the defendants' assertion of a Section 5 exemption as to document i. The Section 5 exemption was not raised as to document i either in the initial agency denial of disclo-

---

**7.** The excised portions of documents vii and ix were withheld on the basis of exemptions under both Section 5 and Section 7. Therefore although the court's ruling on the Section 7 exemption for document i will also apply to documents vii and ix it will not be dispositive as to those documents.

**8.** It is for this very reason that plaintiff's argument that document i reflects final agency action of some kind must fail. The compliance review is clearly preliminary in nature.

sure nor in the appeal decision of HUD's General Counsel. Similarly, HUD failed to raise the claimed exemption in the supplemental affidavit of Edward Pollack which affidavit purported to provide plaintiff with a detailed justification for non-disclosure. I rule that by their failure to seasonably claim it the defendants have waived any Section 5 exemption which they might have been entitled to assert as to document i. However, since a Section 5 exemption has been asserted from the outset as to documents vii, viii and ix, the Court will consider the validity of that exemption as to those three documents.

In a memorandum from Joseph Vera, ARA of Fair Housing and Equal Opportunity dated July 16, 1976, BHA was notified of its non-compliance with Title VI. In that letter BHA was informed that if it did not "voluntarily comply or adopt and implement a plan adequate to accomplish the purpose of Title VI within sixty calendar days" the matter would be referred to the Assistant Secretary of Fair Housing and Equal Opportunity in Washington, D. C. Attached to the letter was a copy of the compliance review in its entirety.

Under HUD enforcement procedures, upon receiving a referral from the Regional Office, the Assistant Secretary of Fair Housing and Equal Opportunity pursuant to a formal delegation from the Secretary of HUD, determines whether or not the case should be referred to the Department's legal counsel for commencement of enforcement proceedings.[9]

Pursuant to that agency procedure James Blair the Assistant Secretary received the recommendations of ARA Joseph Vera, regarding BHA in Vera's July 18, 1976 memorandum. The memorandum is document vii, an excised version of which has been provided to plaintiff.

At some time between July 18, 1976 and August 10, 1976 Edward Pollack became Acting ARA replacing Joseph Vera. In a memorandum to Assistant Secretary Blair

dated August 10, 1976 Mr. Pollack in his capacity as acting ARA made his recommendations regarding BHA. That memorandum is document viii, portions of which were withheld from plaintiff. Document viii in its entirety has become part of the file in this action.

Document ix is an August 25, 1976 memorandum in which Assistant Secretary Blair notified Mr. Frye, the Regional Administrator of Fair Housing and Equal Opportunity that he was delaying his decision as to whether the BHA case would be referred to the department's legal counsel on the basis of facts set forth in Mr. Pollack's memorandum (document viii). The portion of document viii upon which Assistant Secretary Blair relied, recited developments in the negotiations between Acting ARA Pollack and BHA which evidenced a movement by BHA toward voluntary compliance. The portions of document viii referenced by Assistant Secretary Blair in his memorandum were not deleted in the excised version of document viii which was initially made available to plaintiff.

Mr. Blair in document ix also referred to the recommendation which had been made by ARA Vera in document vii. The portions of document ix which tended to reveal ARA Vera's recommendations were deleted from the copy of document ix with which plaintiff was provided just as they had been deleted from document vii.

Defendants maintain that the undisclosed portions of documents vii, viii and ix are exempt from disclosure as inter-agency or intra-agency memoranda within the meaning of Section 5. Defendants argue that to force disclosure of the excised opinions and recommendations of agency staff set forth in documents vii, viii and ix would do damage to the agency deliberative processes, inhibit free discussion among agency personnel and injure the quality of agency decisions thus frustrating the legislative intent behind Section 5, as set forth in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95

---

9. The Secretary of HUD has formally delegated the authority to decide whether or not to refer each case for enforcement proceedings to the

Assistant Secretary of Fair Housing and Equal Opportunity. 36 Fed.Reg. 8,821 (1971).

S.Ct. 1504, 44 L.Ed.2d 29 (1975), and *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

Plaintiff, however, points out to the court that in enacting the FOIA Congress also directed its attention to inter-agency or intra-agency communications in another portion of the statute. 5 U.S.C.A. § 552(a)(2) (hereinafter Section 2) provides:

> Each agency, in accordance with published rules, shall make available for public inspection and copying—
>
> (A) Final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
>
> (B) Those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and
>
> (C) Administrative staff manuals and instructions to staff that affect a member of the public.

In *NLRB v. Sears, Roebuck & Co., supra*, the Supreme Court ruled that documents which came within the provisions of Section 2(A) could never be exempt under Section 5 and expressed its reluctance to construe Section 5 so as to apply it to documents described in Sections 2(B) and 2(C).

It is submitted by the plaintiff that documents vii, viii and ix are covered by the provisions of Section 2 and not exempt under Section 5. In furtherance of that argument plaintiff first contends that document ix constitutes a final opinion within the meaning of Section 2(A) arguing that the Assistant Secretary's decision not to refer a particular case to the department's legal counsel operates as a final agency decision. Accordingly, plaintiff submits that the decision of Assistant Secretary Blair not to refer the BHA case to the department's legal counsel is a final agency decision and that document ix is publicly available under Section 2(A) and not entitled to the protection of a Section 5 exemption. Plaintiff further submits that documents vii and viii are also available under Section 2(A) because the Assistant Secretary based his final decision upon those documents.

After an in camera inspection of document ix, I rule that it is not a final agency order within the meaning of Section 2(A). The August 25, 1976 memorandum of Assistant Secretary Blair is tentative on its face and reflects no more than Mr. Blair's decision not to make a final agency decision as of that date. Documents vii and viii are also outside the provisions of Section 2(A) since plaintiff's claim that documents vii and viii are publicly available pursuant to Section 2(A) is dependent on a ruling that document ix is a final agency order.

Plaintiff argues however that even if documents vii, viii and ix are not available under Section 2(A) they are publicly available as statements of policy adopted by the agency under Section 2(B) or instructions to staff which affect a member of the public under Section 2(C).

After examining documents vii, viii and ix, I rule that there is no basis for plaintiff's claim that the documents contain any statement of policy that has been adopted by the agency. Having in mind that the August 25, 1976 memorandum of Assistant Secretary Blair was tentative in nature, I rule that documents vii, viii and ix reflect predecisional and deliberative steps in the agency decision making process and that no policy or rule was set forth in the memoranda by which the agency would be bound in any way. I further rule that even if document ix were a final agency decision, binding on the agency, it does not "adopt" any policy or rule formulated in documents vii or viii but merely relies on the facts set forth in document viii which were not excised from plaintiff's copy.

Additionally I rule that documents vii, viii and ix are not publicly available under Section 2(C) as instructions to staff which affect a member of the public.

An in camera inspection establishes that document ix is an informational memorandum which contains no instructions to staff whatsoever. It is clear even from the unexcised portions set forth in plaintiff's copy that Assistant Secretary Blair is merely apprising the Regional Administrator of the fact that no decision had been made and

that the matter is still pending. Document ix is not publicly available within the provisions of Section 2(C) and thus any reference made in document ix to documents vii and viii cannot bring those documents within that provision. I further rule that documents vii and viii contain the recommendation of Mr. Vera and Mr. Pollack to their superior and cannot be construed as instructions to staff.

■ Accordingly, having in mind that disclosure and not secrecy is the dominant objective of the FOIA and that the exemptions set forth in the FOIA should be narrowly construed, *Department of the Air Force v. Rose, supra,* I rule that the excised portions of documents vii and ix are exempt from disclosure pursuant to Section 5 as opinions and recommendations of staff contained in intra-agency memoranda. Further consideration is necessary however as to document viii.

Plaintiff's motion for summary judgment is supported by the affidavit of Louise Elving. That affidavit establishes that a Master appointed by the Boston Housing Court in an unrelated case in which BHA was a party received copies of several of the documents including document viii for which HUD had claimed an exemption either under Section 7 or Section 5. Plaintiff argues that the HUD-authorized dissemination of that information operated as a waiver of any exemption which might otherwise have applied to those documents. In light of the foregoing rulings this court need only consider the waiver issue as to document viii.

The Elving affidavit establishes that a copy of document viii was received in the office of the Master on September 3, 1976, that it was received from either HUD or BHA, that no limitation was placed on the use or dissemination of the document, and, that it was placed in a file which was available for public perusal.

Plaintiff submits that the policy underlying the Section 5 exemption is to insure frank expression of opinions within the agency by keeping such communications confidential and that by so legislating congress intended to protect the quality of the agency decision making process. *NLRB v. Sears, Roebuck & Co., supra; EPA v. Mink, supra.* Plaintiff argues that no such policy considerations are served when an agency has voluntarily disseminated information which would otherwise be exempt. It is conceded by plaintiff that a limited voluntary disclosure to an authorized agency of the United States government does not constitute a waiver. See, *Aspin v. Department of Defense,* 160 U.S.App.D.C. 231, 491 F.2d 24 (1973); *Safeway Stores, Inc. v. FTC,* 428 F.Supp. 346 (D.D.C.1977); *Exxon v. FTC,* 384 F.Supp. 755 (D.D.C.1974), but plaintiff argues that once a voluntary disclosure has been made by a federal agency to any non-federal party then that disclosure must be made to all persons.

It is clear that the disclosure of document viii to a non-federal party was not necessary to effect the purpose of that document. *Cf., Cooper v. Department of Navy,* 558 F.2d 274 (5th Cir. 1977) (where aircraft manufacturer's technical representatives were given limited access to Navy Aircraft Safety Investigation on a "need to know" basis in order to effectuate the investigation's purpose of accident prevention.); *Overby v. United States Fidelity and Guaranty Co.,* 224 F.2d 158 (5th Cir. 1955) (where effective supervision and regulation of national banks required disclosure of a report compiled by National Bank Examiner's to bank directors.) Mr. Pollack's recommendations to Assistant Secretary Blair cannot be construed as having no effective purpose unless seen either by BHA or the Master. In addition, unlike, *Safeway Stores, Inc. v. FTC, supra* and *Overby v. United States Fidelity and Guaranty Co., supra; Safeway Stores Inc. v. FTC, supra,* there is no contention in the case at bar that the disclosure was unauthorized.

■ I rule that, at least in those circumstances where an authorized disclosure is made to a non-federal party and such disclosure is not necessary to effect the purposes of the document, any claim of an exemption under Section 5 as to that document is waived. Therefore whether HUD disclosed the document to the Master or to

BHA, HUD by the disclosure waived the exempt status of document viii under Section 5 on September 3, 1976.

In accordance with the foregoing rulings plaintiff is not entitled to injunctive relief as to documents vii and ix. However an order should be entered enjoining defendants HUD and Patricia Roberts Harris from continuing to withhold the remaining portion of document i and directing its immediate release.