**SHELL OIL COMPANY, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE and Department of the Treasury, Defendants.**

**Civ. A. No. 89–468–JRR.**

United States District Court, D. Delaware.

Aug. 2, 1991.

William O. LaMotte, III of Morris, Nichols, Arsht & Tunnel, Wilmington, Del. (Charles W. Hall, J. Todd Shields, John C. Letteri, Fulbright & Jaworski, Houston, Tex., of counsel), for plaintiff.

William C. Carpenter, U.S. Atty., and Patricia C. Hannigan, Asst. U.S. Atty., Wilmington, Del. (Kathryn J. Brown, Trial Atty., U.S. Dept. of Justice, Washington, D.C., of counsel), for defendants.

## OPINION

ROTH, Circuit Judge.*

Plaintiff Shell Oil Company brought this action as part of its effort to learn the contents of certain Internal Revenue Service documents. These documents were requested by Shell under the Freedom of Information Act, but were withheld as privileged by defendants Internal Revenue Service and the Department of the Treasury. Shell has moved for partial summary judgment regarding a single document. The defendants, who shall be referred to in the remainder of this opinion as "the government," maintain that they are entitled to withhold this document because it falls within the ambit of the "deliberative pro-

---

* This case was briefed and argued before Judge Roth assumed her duties as a member of the United States Court of Appeals for the Third Circuit.

cess" privilege that is available under the Freedom of Information Act. Shell, however, contends that the government waived any possible privilege when an Internal Revenue Service official read a definition of "tar sands" to a January 25, 1990, meeting of government and oil industry officials. Shell asserts that the government must disclose the agency records comprising the definition of "tar sands" as that definition is employed in regulation project files LR–226–81 and PS–226–81. After full briefing, the parties were heard at oral argument, and the issue is ripe for decision. For the reasons that follow, we shall grant Shell's motion for partial summary judgment as it applies to the definition of "tar sands" read at the January 25, 1990, meeting.

## I. FACTS

This litigation stems from Shell's desire to obtain a definition of the term "tar sands" as it is employed in the Crude Oil Windfall Profit Tax Act of 1980 ("the Crude Oil Act"). Section 29 of the Internal Revenue Code, which embodies part of the Crude Oil Act, provides a tax credit for oil produced from "tar sands," but does not define the term. In fact, from 1980 to 1989 no official definition was available.[1] Acting on its suspicion that the Service during these years had been using a "secret" or "working" definition that restricted the tax credit to oil produced through certain extraction methods, Shell resolved to obtain more information. In December 1988, Shell submitted two Freedom of Information Act ("FOIA") requests to the Service and one to the Department of the Treasury ("Treasury"). These requests sought, among other things, all documents related to (a) any agency consideration of the adoption of a definition in Treasury Regulations of the term "tar sands" (including regulation projects) and (b) interpretive guidance offered in connection with either § 29 or

the Crude Oil Act. Shell also sought all documents concerning (a) promulgation of Treasury Regulation 1.48–9 and (b) any possible issuance in connection with that Regulation of any Revenue Ruling or other interpretive guidance concerning both the definition of "oil or gas substance" and the question of whether "tar sands" constitute an "alternative substance" under the Act.

In response to these requests, the government supplied certain documents but withheld others in reliance on the "deliberative process" privilege encompassed within the Freedom of Information Act.[2] After exhausting its administrative remedies, Shell sought judicial review of the propriety of the withholding by filing the instant complaint. The complaint sought a declaration that the withholding violated the FOIA, the Administrative Procedure Act, and the Service's own regulations; an injunction against continued improper withholding; an order to produce the withheld records; and reasonable attorneys fees and litigation costs.

The event that precipitated the present motion occurred nearly five months after Shell filed the complaint. At a January 25, 1990, meeting of federal government and oil industry representatives, a Service employee named Joseph Makurath twice read aloud a definition of "tar sands" from a draft notice of proposed rulemaking. The government acknowledges that the definition was read verbatim. The document from which Makurath read was not physically distributed or released to those in attendance.

As we discuss below, the parties have different views of the import of what occurred at the meeting. There is no debate, however, about Shell's reaction to this public reading. The company soon filed two additional FOIA requests that were directed to obtaining, among other things, the

---

**1.** The Internal Revenue Service ("the Service") did not issue an official definition of "tar sands" until Technical Advice Memorandum 89–40–004 was released in 1989.

**2.** The FOIA exempts from disclosure documents that are, among other things, "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As we explain below, this exemption is the basis for a number of privileges.

document from which Makurath read. To Shell's dismay, the government did not supply this document. After exhausting administrative appeals from this and other withholdings, Shell amended its complaint in this Court to reflect its dissatisfaction with more recent developments.

Through its motion for partial summary judgment, Shell now asks us to resolve a narrow issue: Did Makurath's public reading of at least a portion of the withheld document amount to a waiver of the government's right to assert the "deliberative process" privilege under the FOIA? We hold that at least to the extent that the document was read aloud, the government did waive that right and that it must turn over to Shell that portion of the disputed document.

## II. DISCUSSION

A. Applicable Law

1. *FOIA and the Deliberative Process Privilege to Withhold Documents from Disclosure*

■ The FOIA was enacted in 1966 to grant broad public access to government records. *North Dakota v. Andrus*, 581 F.2d 177, 179 (8th Cir.1978). It is designed, in other words, to guarantee the right of persons to know about the business of their government, *Durns v. Bureau of Prisons*, 804 F.2d 701, 703 (D.C.Cir.1986) (quoting House Report), *vacated on other grounds*, 486 U.S. 1029, 108 S.Ct. 2010, 100 L.Ed.2d 598 (1988), including particular agency actions. *See United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 771–73, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989). Therefore, in pursuit of the laudable goal of ensuring an informed citizenry, agencies must adhere to a general philosophy of full disclosure. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 141–43, 109 S.Ct. 2841, 2846, 106 L.Ed.2d 112 (1989); *Department of the Air Force v. Rose*, 425

U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976).

■ The broad access to public records that is provided by the FOIA is not, however, unlimited. Because "public disclosure is not always in the public interest," *Baldrige v. Shapiro*, 455 U.S. 345, 352, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199 (1982), Congress created nine specific exemptions from disclosure. These exemptions are explicitly made exclusive and must be narrowly construed. 5 U.S.C. § 552(c); *Rose*, 425 U.S. at 361, 96 S.Ct. at 1599. At issue here is the exemption from disclosure granted under 5 U.S.C. § 552(b)(5), which provides that the FOIA does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This rather nebulous statutory text, which is commonly known as "Exemption 5," was intended by Congress to incorporate the common law discovery privileges that the government enjoyed in pre-FOIA litigation. *See e.g.*, S.Rep. No. 813, 89th Cong., 1st Sess. 29 (1965). The Supreme Court has warned, however, that such discovery rules should be applied in FOIA cases "by way of rough analogies." *E.P.A. v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973).

■ In the present case the government asserts the so-called "deliberative process" privilege.[3] As a general matter, the privilege permits an agency to refuse to disclose documents reflecting advisory opinions, recommendations, and deliberations comprising the process by which governmental decisions and policies are formulated. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). While "the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions," *Sears*, 421 U.S. at 151, 95 S.Ct. at 1516, there are three more specific reasons for according the privilege. First and foremost, the privilege encourages agency subordinates to share their views freely

---

**3.** This privilege is also known as the "predecisional," "executive," or "governmental" privilege.

and frankly with their superiors, free of worry about later public criticism. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980); *Dow, Lohnes & Albertson v. Presidential Comm'n on Broadcasting to Cuba,* 624 F.Supp. 572, 574 (D.D.C.1984). In other words, the privilege prevents injury to the "consultative function of government." *Mink,* 410 U.S. at 87, 93 S.Ct. at 836. Second, it protects against premature disclosure of policy that has not yet been finally formulated or adopted by the agency. *Coastal States Gas,* 617 F.2d at 866. Finally, the privilege protects "against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Id.*

■ An agency asserting that a document is exempt under the deliberative process privilege rooted in Exemption 5 bears the burden of demonstrating that it is predecisional and deliberative in nature. 5 U.S.C. § 552(a)(4)(B); *Schlefer v. United States,* 702 F.2d 233, 237 (D.C.Cir.1983). Shell assumes, for purposes of its motion for partial summary judgment, that the government has met its burden and that the withheld document falls within the scope of the privilege. Without deciding that issue, we make the same assumption.

### 2. *Elements of Waiver of the Deliberative Process Exemption*

We now turn to the difficult task of clarifying the legal elements of a waiver of the deliberative process privilege. The parties' views on this matter are far from harmonious. Shell argues that any voluntary disclosure of agency records waives FOIA exemptions. Waiver does not, according to Shell, depend on release of actual documents, on physical copying of a document, or on the disclosing person's intent. Rather, if an authorized disclosure is made to a non-federal party and the disclosure is not necessary to effect the purpose of the document, a waiver occurs.

The government, by contrast, insists that the party seeking disclosure bears the initial burden of showing that specific information in the public domain appears to duplicate that being withheld. The government also appears to argue that waiver cannot be found where there has been a mere verbal release of information; rather, there must be release of an actual document. Moreover, the government asserts rather indirectly that a disclosing party's intent is somehow relevant to a determination of waiver. Finally, it warns that finding a waiver in a setting such as this would chill informal discussion of pending regulation.

There is strong case law supporting the broad waiver rule propounded by Shell. Indeed, in *North Dakota v. Andrus,* 581 F.2d 177 (8th Cir.1978), the Eighth Circuit held that the federal government, by voluntarily surrendering agency records in earlier litigation, waived its right to assert at a later time that the same records were exempt from disclosure under the deliberative process privilege. 581 F.2d at 179. In *Andrus,* the government had in an earlier lawsuit permitted counsel for the Audubon Society to view the purportedly privileged documents, but under two conditions, namely (1) that Audubon's counsel would maintain the records' confidentiality and (2) that the government could later assert that the documents were privileged. *Id.* at 180.

The Eighth Circuit decided that these conditions did not support the government's claim of privilege in a later lawsuit. Stating that the earlier public viewing rendered the government's later claim of confidentiality "substantially less credible," *id.* at 181, the court went on to explain that releasing the documents would not inhibit intra-agency exchange of opinions. *Id.* at 182. Rather, such selective disclosure was found to be "offensive to the purposes underlying the FOIA and intolerable as a matter of policy." *Id.* To the court, "[p]referential treatment of persons or interest groups fosters precisely the distrust of government that the FOIA was intended to obviate." *Id.* The court's finding of a waiver was buttressed by the fact that the disclosure to the Audubon Society was done "voluntarily." *Id.* n. 9. In sum, *An-*

*drus* lays out a simple waiver rule: If the prior disclosure is voluntary and is made to a third party, the deliberative process privilege is waived, even where the third party had promised not to disclose the information further.

The same broad rule is found in *Mead Data Central, Inc. v. United States Dept. of Air Force,* 566 F.2d 242 (D.C.Cir.1977), a case that played an important role in the *Andrus* decision just discussed. In that case, Mead Data sought disclosure of seven documents pertaining to the Air Force's negotiation of a license agreement with West Publishing Company. The district court upheld the withholding, but the District of Columbia Circuit reversed, holding that the government could not assert the attorney-client and deliberative process privileges available under Exemption 5.

With regard to two of three documents allegedly covered by the attorney-client privilege, the court held that the government had not met its burden of demonstrating that the information was confidential. *Id.* at 253–54. The court remanded for reconsideration of this issue, warning that "[i]f the information has been or is later shared with third parties, the privilege does not apply." *Id.* at 253. On remand, the government would have to show that the information was supplied by the Air Force with the expectation of secrecy and, most important here, "was not known or disclosed to *any* third party." *Id.* at 254 (emphasis supplied). When it came to the third document withheld under the attorney-client privilege, the court held that information concerning what the Air Force had offered to a third party in contractual negotiations was not privileged. Thus, *Mead Data* clearly instructs that at least with respect to the attorney-client privilege, disclosure to any third party can waive the privilege.

Turning next to the four documents that were withheld under the deliberative process privilege, the *Mead Data* court was somewhat less precise in its statement of a waiver rule. After noting that the privilege applied to documents generated in deliberation taking place *within* a government agency, the court stated that "[a]ll of the information as to what the Air Force offered West Publishing ... has already been fully disclosed to at least one party outside the Department—West itself—and the Department has no control over further disclosure." *Id.* at 257–58. The court decided that the government would have to provide "far more compelling reasons" to permit withholding than "conclusory allegations" that disclosure of information that was already in the hands of a third party would interfere with the Air Force's future negotiations. *Id.* at 258. *Mead Data* thus strongly suggests that when a government agency voluntarily shares information with a third party outside of the government, it waives any possible deliberative process privilege.

A third case cited by Shell also supports a broad definition of waiver. In *Lawyers Committee for Human Rights v. I.N.S.,* 721 F.Supp. 552 (S.D.N.Y.1989) the court considered the government's assertion of a variety of FOIA exemptions in responding to a request for documents concerning a Colombian journalist who was barred from entering the United States. The plaintiff submitted the underlying FOIA request to obtain proof that the government's proffered reasons for exclusion—her alleged affiliations with a Colombian terrorist organization and a Cuban intelligence service— were a mere pretext for excluding her because of her opposition to the Reagan administration's Central America policy. *Id.* at 555. In support of the withholding, the government supplied affidavits [4] from the Central Intelligence Agency, the Federal Bureau of Investigation, and the Department of State, each of which explained in brief form why particular documents were not disclosed.

The *Lawyers Committee* court found that the State Department had met its bur-

---

4. An agency may meet its burden of proving the propriety of its withholding by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

den of demonstrating the requisite confidentiality of many of the withheld documents. *Id.* at 569. However, the court ordered disclosure of two documents that were withheld under the national security exemption, 5 U.S.C. § 552(b)(1), because they had "already . . . been released to the public" through the Colombian Embassy. *Id.* It also ordered the government to disclose portions of three other documents that discussed, as the affidavit put it, "off-the-record exchanges with the press." *Id.* It was appropriate, stated the court, to order such disclosure since release to the press "constitutes a prior release of relevant information." *Id.* Responding to the apparent contention by the government that the earlier disclosure to the press was a "leak," the court stated that the Department "would not logically have discussed such information with the press unless it was sure that a 'leak' would not breach national security." *Id.* The court thus found that the Department's reliance on the national security exemption was "undercut by its own prior action." *Id.*

*Lawyers Committee,* while it involved the § 552(b)(1) national security exemption rather than the § 552(b)(5) deliberative process privilege, nevertheless supports Shell's view of waiver. The case is noteworthy because of the simplicity of its view of waiver through prior disclosure. In one instance, the mere prior release of documents outside the federal government resulted in waiver. There was no discussion of countervailing governmental interests. In the other instance, a verbal release of information amounted to a waiver even where the releasing official apparently intended that the information not be attributed to him by the press. As in *Andrus,* the court did not believe that the "off-the-record" nature of the second release warranted the privilege. This result is particularly remarkable because the disclosed material concerned the very sensitive area of national security. In addition, the court did not entertain, much less consider, argu-

ments based on the intent of the disclosing party. One therefore cannot read *Lawyers Committee* without acknowledging that the FOIA's general policy of disclosure triumphed over vague concerns about confidentiality and technical arguments about the nature and form of prior disclosure.

Perhaps the clearest statement of the waiver rule relied upon by Shell appears in *Education/Instruccion, Inc. v. United States Dep't of Housing and Urban Development,* 471 F.Supp. 1074 (D.Mass.1979). In this case the plaintiff requested disclosure of documents related to a HUD review of the Boston Housing Authority's housing programs. 471 F.Supp. at 1075. In the course of discussing the many exemptions from disclosure claimed by HUD, the court turned to a single withheld document. *Id.* at 1081. Either HUD or the Housing Authority had, in an earlier unrelated case, released the document to the municipal housing court without limitation on its use or dissemination. The housing court had then placed the document in a file that was available to members of the public. *Id.* at 1081.

Acting on the plaintiff's motion for summary judgment, the court ruled that "where an authorized disclosure is made to a non-federal party and such disclosure is not necessary to effect the purposes of the document, any claim of an exemption under Section 5 as to that document is waived." *Id.* "It is clear," stated the court, "that the disclosure of [the document in question] to a non-federal party was not necessary to effect the purpose of the document." *Id.* Since HUD had not argued that the disclosure was unauthorized, the court concluded that HUD had fulfilled all the requirements of a waiver. The *Education/Instruccion* case, like *Lawyers Committee,* thus appears to place virtually no conditions on a definition of waiver. On the contrary, the plaintiff simply must prove that the disclosure was authorized, and was not necessary to effect the purposes of the document.[5]

---

5. Because we are not dealing here with documents whose disclosure might be "necessary to effect the purposes of the document," we will

not expand upon this concept. However, in coming to the conclusion that we reach in this case, we are in no way attempting to require

■ To summarize, the four cases cited by Shell lead to the following rule: Where an authorized disclosure is voluntarily made to a non-federal party, whether or not that disclosure is denominated "confidential," the government waives any claim that the information is exempt from disclosure under the deliberative process privilege.

■ We now address the government's contentions that the rule is not so simple and that a waiver should be found only if certain stringent conditions are met. The first such requirement appears in *Dow, Lohnes & Albertson v. Presidential Comm'n*, 624 F.Supp. 572 (D.D.C.1984), a case in which the plaintiff had requested documents relating to radio broadcasts to Cuba. The district court in ruling on the request stated that the plaintiff bears the burden of showing prior disclosure and that this burden can be met by demonstrating that "specific information in the public domain appears to duplicate that being withheld." *Id.* at 578. The government cites *Dow, Lohnes* as standing for the requirement that a plaintiff must not only show that the government at one time released the *information* contained in a requested document, but also that the government released the requested *document* in its entirety. This argument is supported by the determination of the court in *Dow, Lohnes* that the (b)(5) exemption was not waived if a predecisional and deliberative document was viewed by—but not given to—a small group of people. The court found that the releasing official intended "a limited disclosure to a small group of people (which would hardly inhibit candid agency decisionmaking), not a general public inspection." *Id.* Insofar as this conclusion is in conflict with that of the Eighth Circuit in the *Andrus* case, we agree with the Eighth Circuit that selective disclosure is "offensive to the purposes underlying the FOIA" and that "[p]referential treatment of persons or interest

groups fosters exactly the distrust of government that the FOIA was intended to obviate." 581 F.2d at 182. We find that a releasing official's intent that a small group have confidential access to the contents of a document is not sufficient to prevent waiver of the exemption. It is the fact of disclosure, not the intent behind that disclosure, which is determinative.

■ As Shell points out in this regard, FOIA speaks in terms of disclosure and nondisclosure; it does not recognize degrees of disclosure. *See Julian v. United States Dep't of Justice*, 806 F.2d 1411, 1419 n. 7 (9th Cir.1986) (quoting case) (rejecting notion that waiver requires photocopying of information), *aff'd*, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988). *Compare Andrus*, 581 F.2d at 180 (finding waiver despite earlier recipient's promises of confidentiality). Indeed, the *Dow, Lohnes* opinion cites no authority for such a concept. We believe that permitting officials coyly to release information once and then refuse to do so again would contradict Congress' desire to have agencies disclose to the *entire* regulated public, not just to a select few individuals who, through influence or mere serendipity, happen to benefit from an official's decision to disclose. We note, too, that Congress placed the burden of justifying withholding on the government's shoulders. The plaintiff should not have to disprove a government official's denial that he or she intended a broad public disclosure. We hold that once a government official voluntarily discloses information, a determination of whether the deliberative process privilege has been waived will not in the normal course of events turn on whether the official intended to limit the scope of the disclosure.[6]

The next condition which the government would place on a finding of waiver is release of an "actual document." Answering Brief at 4. The government cites many cases finding a waiver where an actual document was released, but not one hold-

disclosure of documents in the "necessary to effect the purposes" category. *See, e.g., Cooper v. Department of the Navy*, 558 F.2d 274, 276–78 (5th Cir.1977).

**6.** For a reference to the "necessary to effect the purposes of the document" exception to this rule, see *supra* footnote 5.

ing that waiver depends on physical release of a copy of a document. It is true, of course, that the *Dow, Lohnes* court, in approving a withholding, said that the relevant agency had not allowed the plaintiff's representatives "to make a photocopy." This comment, however, was made in support of the notion that the official in question had not intended a broad disclosure when he let a third party view the information. We have rejected the idea that intent plays a central role in the waiver calculus. Thus, the case does not support the government here.

The bald argument that no waiver should be found unless a physical copy of disclosed information has been released is a weak one. Consider, for example, a press conference at which a Food and Drug Administration official reads aloud an internal evaluation of the effectiveness of a new AIDS drug. Assume further that the official does not hand out copies of his text, but that a television news crew records every word coming from the official's mouth and broadcasts a videotape of the same on the evening news. It would be absurd to allow the agency to later assert that it had not waived the deliberative process privilege simply because a photocopy of the memorandum had not been released at the press conference. In this example the FDA's stake in preventing disclosure of the memorandum is in maintaining its confidentiality. Once the information contained in the memorandum is disclosed, it loses its confidential status, its text having been captured for posterity by the magic of videotape.

■ We hold that waiver of the deliberative process privilege does not depend on receipt of a physical copy of the disclosed information. A public reading of the document is sufficient. Our holding in this regard is supported by *Andrus*, where a viewing of information was deemed a waiver, and by *Lawyers Committee*, where an oral "off the record" statement was deemed a waiver.

The government's final objection to a broad waiver rule is its general worry that finding waiver in a discussion held at a public meeting of government and industry representatives would "lead[ ] to the inescapable conclusion that waiver would be found every time an employee expresses opinions in an open and frank exchange of thoughts." Answering Brief at 5. Citing to *Nissen Foods Co. v. N.L.R.B.*, 540 F.Supp. 584 (E.D.Pa.1982), the government warns that such a holding would "prevent, or at least inhibit, [agency officials] from informally discussing a pending matter with anyone." *Id.* at 587. We disagree. *Nissen Foods* was concerned with "general statements by an agency official ... serv[ing] as the basis for the release of intra-agency memoranda." The case before us does not involve such prior "general statements," but instead a verbatim reading of a definition. We need not, and in fact will not, wade into the morass of "prior general statements." A finding of waiver in the circumstances of this case thus would not necessarily stifle informal exchange of ideas. Rather, it would leave government officials free to express their opinions about general subjects.

### B. The Alleged Waiver

Shell has moved for partial summary judgment that the government waived the deliberative process privilege in this case when Joseph Makurath read a portion of a document at a public meeting. Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although all factual issues must be resolved in the light most favorable to the non-moving party, *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), to defeat a summary judgment motion there must be sufficient evidence to support a verdict for that party. For an issue to be genuine, there must be sufficient evidence that a rational trier of fact could find for the non-moving party, and not simply "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–

56, 89 L.Ed.2d 538 (1986). As the Supreme Court has commented:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ We will first discuss the government's contention that Shell has failed, as a matter of law, to meet its burden of demonstrating that the withheld definition of "tar sands" appears to duplicate information that is already in the public record. Even if we construe the facts in the government's favor, this contention lacks merit. We start with the issue of whether the sought-after information is in the "public record." Although the government asserted at oral argument that the January 25, 1990, meeting was not a "public" one, we conclude that it was "public" because non-federal third parties were invited to attend. There can be no doubt, then, that when Makurath read the draft notice aloud, he was reading its contents directly into the public record. The only remaining question is whether Shell has identified with sufficient specificity the information in the public record. We have no trouble finding for Shell on this point, as well. For purposes of this motion, Shell seeks to receive only the definition that Makurath read to the assembled crowd at the meeting. It does not claim that a general discussion of taxation or of "tar sands" was the prior disclosure that should lead to release of the sought-after text. Rather, Shell claims that the prior disclosure consisted of Makurath's reading of the draft definition of "tar sands." In our view, Shell has demonstrated that specific information in the public domain (i.e., the words spoken by Makurath) appears to duplicate that being withheld (i.e., the text from which Makurath read). We conclude therefore that Shell has met its initial burden, and now turn to the merits of its summary judgment motion.

■ Having reviewed the relevant facts in light of the appropriate standards developed under Federal Rule of Civil Procedure 56, we find that there is no genuine issue of material fact regarding the existence of a waiver, and therefore will grant summary judgment for Shell on this point. In the earlier part of this opinion we arrived at a definition of waiver: Where an authorized disclosure is voluntarily made to a non-federal party, the government waives any claim that the information is exempt from disclosure under the deliberative process privilege. Here the undisputed factual evidence meets that definition. We note first that Makurath twice read a definition of "tar sands" from a draft notice of proposed rulemaking at a January 25, 1990, public meeting of government and industry officials. Makurath Deposition at 124–25. The government does not contend that the reading was unauthorized or involuntary. Some of those who heard Makurath's public reading were representatives of industry, i.e., non-federal third parties. Shell therefore has demonstrated that it is entitled to a judgment that, as a matter of law, the government waived the deliberative process privilege on this occasion. The draft definition of "tar sands" therefore must be released.

## III. CONCLUSION

For the reasons stated above, we will grant the plaintiff's motion for partial summary judgment. An appropriate order will follow.