**UNITED STATES of America and State of Missouri, Plaintiffs–Appellees,**

**Missouri Coalition for the Environment, Wilhelmina D. Roberts, and Richard Beatty, Intervenors–Appellants,**

v.

**The METROPOLITAN ST. LOUIS SEWER DISTRICT (MSD), Defendant–Appellee.**

**No. 91–1628.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1991.

Decided Jan. 3, 1992.

Lewis C. Green, St. Louis, Mo., argued (Bruce A. Morrison, on brief), for intervenors-appellants.

Robert L. Klarquist, James W. Erwin, St. Louis, Mo., and Joseph P. Bindbeutel, Jefferson City, Mo., argued (Barry M. Hartman, Stephen B. Higgins, and Joseph B. Moore, St. Louis, Mo., Bruce C. Buckheit, Carl Strass and Dirk D. Snel, Washington, D.C., William L. Webster, Jefferson City, Mo., Donald J. Stohr, St. Louis, Mo., on briefs), for plaintiffs-appellees.

Before BOWMAN and BEAM, Circuit Judges, and VAN SICKLE,* District Judge.

BOWMAN, Circuit Judge.

Missouri Coalition for the Environment, Wilhelmina D. Roberts, and Richard Beatty ("intervenors") appeal from the orders of the District Court entering a consent decree and dismissing the intervenors' complaint and cross-complaint. We affirm in part and vacate and remand in part.

The Environmental Protection Agency of the United States ("EPA") brought this action pursuant to the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §§ 1251 *et seq.* (1988) in March 1988. The EPA alleged that the Metropolitan St. Louis Sewer District ("MSD") was polluting navigable waterways in the St. Louis area in violation of the Clean Water Act. In accordance with 33 U.S.C. § 1319(e) (1988), the complaint named the State of Missouri as a defendant. A similar action had been brought in state court by the State of Missouri in 1986, pursuant to the authority delegated to the State by the Clean Water Act. In 1987 the state court action resulted in the entry of a consent decree, which established a schedule for construction of improvements to MSD facilities designed to bring MSD into compliance with the mandates of the Clean Water Act. The state court decree also directed MSD to pay the State $250,000 as a penalty for certain past violations of the Clean Water Act and established a schedule of fines to be assessed should violations of the decree occur.

In July 1988 the intervenors filed a motion to intervene as a matter of right in the present case pursuant to 33 U.S.C. § 1365(b)(1)(B) (1988). The District Court denied their motion, but we reversed, holding that section 1365(b)(1)(B) entitled the intervenors to intervene in the federal civil

* The Honorable BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

action brought by the EPA. *United States v. Metropolitan St. Louis Sewer Dist.*, 883 F.2d 54, 56 (8th Cir.1989). After being granted leave to intervene, the intervenors filed a complaint and cross-complaint, adopting the EPA's allegations of Clean Water Act violations by MSD as well as alleging violations by the State and the EPA. The cross-complaint asked that the EPA be required to release certain documents related to this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988). Shortly thereafter, the EPA filed a motion to have a proposed consent decree entered. The proposed consent decree, which was agreed to by the EPA, the State of Missouri,[1] and MSD, includes a schedule for construction of improvements to MSD facilities virtually identical to the schedule included in the state court consent decree entered in 1987. It also calls for a $100,000 penalty to be paid the United States in "full satisfaction of all past civil violations of the [Clean Water Act] which were alleged or.... could have been alleged in the Complaint ... and any stipulated penalties under the State Consent Decree." Consent Decree at 19, *reprinted in* Appellants' Addendum at A26. At the same time that the consent decree was proposed in federal court, the state court consent decree was amended so that the two consent decrees would be substantively identical. The proposed consent decree also "fully resolves the United States' and the State of Missouri's claims against MSD ... as set forth in the Complaint ... and any claim for civil penalties subject to imposition ... for violation" of the Clean Water Act up to the date of entry of the decree. Consent Decree at 5, *reprinted in* Appellants' Addendum at A12.

The intervenors objected to the proposed consent decree and filed their objections with the District Court. They also moved to have the State re-aligned as a defendant. The District Court ordered the entry of the consent decree in July 1990, at which time it also dismissed the intervenors' complaint. In January 1991, the court also dismissed the intervenors' cross-complaint. On appeal, the intervenors raise several issues.

The intervenors first claim that the District Court lacked jurisdiction to enter the consent decree because of the preclusive effect of the state court consent decree. This argument is ill-founded. Res judicata is not a jurisdictional issue; rather, it is an affirmative defense that may be waived by the party allowed to assert it. *Nevels v. Hanlon*, 656 F.2d 372, 375–76 (8th Cir.1981); *Rogin v. Bensalem Township*, 616 F.2d 680, 684 n. 11 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). In this case, the intervenors have no standing to raise the defense of res judicata to the federal consent decree. This defense, if it is available at all, may be raised only by MSD. MSD's decision not to assert this defense does not give the intervenors standing to raise it, as a party may assert a third party's rights only if, *inter alia*, the third party is unable to assert its own rights, a condition not present here. *Singleton v. Wulff*, 428 U.S. 106, 115–16, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976).

The intervenors also claim that the District Court lacks jurisdiction to enter the consent decree because the State improperly is included in this action as a plaintiff. 33 U.S.C. § 1319(e) states:

> Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment ... entered against the municipality in such action to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment.

Because this section declares that the State may be liable for a judgment reached against a municipality, the normal course of action is for the United States to name the State as a defendant. This, however, is

---

1. While the denial of intervention was being appealed, the District Court granted the State's motion to re-align itself as a plaintiff.

not required by the statute; the statute requires only that the State be "joined as a party." 33 U.S.C. § 1319(e). The State of Missouri originally was joined as a defendant in this action, but after the consent decree initially was proposed, moved to be re-aligned as a plaintiff. The District Court granted this motion. Although the re-alignment may well have been unnecessary, the denomination of the State of Missouri as a plaintiff rather than as a defendant does not deprive the District Court of jurisdiction over this action. The statute requiring the joinder of the State in such actions does not prohibit the joinder of the State as a plaintiff, and we hold that the alignment of the State is irrelevant to the authority of the court to enter a consent decree.

 The intervenors next assert that the District Court had no jurisdiction to enter the consent decree because it declined to hold an evidentiary hearing prior to entering the decree. We disagree. The absence of an evidentiary hearing does not affect a court's jurisdiction over an action. Further, it is within the sound discretion of the trial court to decide whether an evidentiary hearing is necessary before ruling on a proposed consent decree. *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 93–94 (1st Cir.1990). Here, the District Court did not abuse its discretion in approving the consent decree without conducting an evidentiary hearing. Once the intervenors had an opportunity to file objections to the proposed consent decree, "[t]here is little else that they could have done." *United States Envtl. Protection Agency v. City of Green Forest*, 921 F.2d 1394, 1402 (8th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991). Not only were the intervenors allowed to file objections with the EPA during the public comment period, but also they filed their objections with the District Court. Their right to intervene in this action, recognized by us in *United States v. Metropolitan St. Louis Sewer District, supra,* does not grant the intervenors an unconditional right to an evidentiary hearing. The intervenors did not object to any of the substantive provisions of the consent decree other than the

stipulated penalty of $100,000 to be paid by MSD to the United States. This absence of substantial factual issues supports the District Court's decision not to hold an evidentiary hearing. Although a brief evidentiary hearing might have been useful, "there is no ironclad requirement of such a hearing, and its omission in this case was not a reversible error." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust*, 834 F.2d 677, 684 (7th Cir.1987) (citation omitted).

 The intervenors also claim that the District Court, in its review of the consent decree, erroneously failed to apply the standard of review concerning civil penalties enumerated in 33 U.S.C. § 1319(d) (1988). We reject this claim. When reviewing a proposed consent decree, the trial court is to review the settlement for fairness, reasonableness, and adequacy. *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir.1988); *accord Sierra Club, Inc. v. Electronic Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir.1990). A consent decree is not reviewed as a judgment on the merits. Accordingly, the District Court was not required to apply the standards of section 1319(d), which spells out the factors to be used in determining the appropriate civil penalty to be levied against a party found to be in violation of the Clean Water Act.

 A further claim of the intervenors is that the District Court abused its discretion in approving the consent decree. We cannot accept this claim. The court was aware that compliance with the Clean Water Act will not be accomplished quickly, but recognized that the construction schedules, stipulated penalties, and the payment of a civil penalty to the United States all help ensure that "compliance ultimately will be accomplished." Memorandum Opinion of July 13, 1990 at 5, *reprinted in* Appellants' Addendum at A6. We cannot say that such a review of the consent decree was an abuse of discretion. *See Van Horn*, 840 F.2d at 607 (approval of settlement reviewed for abuse of discretion).

 Next, the intervenors argue that the District Court erred in dismissing their

complaint. They claim that the entry of the consent decree cannot bar their separate claims. On appeal, the only claim that the intervenors raise that is not precluded by the entry of the consent decree, *see Green Forest,* 921 F.2d at 1403–05 (discussing res judicata effects of consent decree), is their claim that both the United States and the State of Missouri have violated 33 U.S.C. § 1251(e) (1988), which requires the Administrator of the EPA and the State to provide for, encourage, and assist with "[p]ublic participation in the development ... and enforcement of any ... plan ... established by the Administrator or ... State." Whether or not this section gives a section 1365(b)(1)(B) intervenor an enforceable right was not addressed by the District Court. "This is a situation where we would benefit from having the District Court decide the issue ... before we address it." *Schweiss v. Chrysler Motors Corp.,* 922 F.2d 473, 476 (8th Cir.1990). Accordingly, we remand this case to the District Court to determine whether section 1365(b)(1)(B) intervenors have a private enforceable right under section 1251(e).

■ Finally, the intervenors claim that the District Court erroneously dismissed their FOIA cross-complaint, which asked that the court require the United States to make available any drafts of the consent decree. The District Court held that the draft consent decrees sought by the intervenors are attorney work product and thus exempt from release under FOIA, pursuant to 5 U.S.C. § 552(b)(5) (1988). The court also ruled that the drafts are predecisional draft documents, which also are exempt under section 552(b)(5). The intervenors claim that the draft consent decrees either are not covered by the section 552(b)(5) exemption, or that the exemption was waived, or that the exemption was not properly invoked.

■ We think it beyond doubt that draft consent decrees prepared by a federal government agency involved in litigation are covered by the section 552(b)(5) exemption. Less clear, however, is whether the exemption has been waived by the government in this case. The intervenors allege that draft consent decrees were circulated to at least sixteen outside consulting firms, as well as to representatives of the media. The policy objectives of the section 552(b)(5) exemption are not relevant when the government voluntarily has chosen to disclose otherwise exempted material on a selective basis. Voluntary disclosure "indicate[s] a diminished expectation of privacy," *North Dakota v. Andrus,* 581 F.2d 177, 182 (8th Cir.1978), and thereby acts as a waiver to the section 552(b)(5) exemption. When documents are voluntarily released to third parties, "the government's assertion that these communications [are] confidential [is] rendered substantially less credible." *Id.* at 181. *Cf. United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (holding that the common-law attorney work-product privilege is not absolute and may be waived).

"The inquiry into whether a specific disclosure constitutes waiver is fact specific," *Mobil Oil Corp. v. United States Envtl. Protection Agency,* 879 F.2d 698, 700 (9th Cir.1989); *accord Carson v. United States Dep't of Justice,* 631 F.2d 1008, 1016 n. 30 (D.C.Cir.1980) ("the extent to which prior agency disclosure may constitute a waiver of the FOIA exemptions must depend both on the circumstances of prior disclosure and on the particular exemptions claimed."). Here, the circumstances surrounding the disclosure of the draft consent decrees to various outside parties are not known to this court. Accordingly, we remand this claim to the District Court so that the court may make an appropriate factual inquiry and determine whether the alleged disclosures of the draft consent decrees by the government constitute a waiver of the section 552(b)(5) exemption.[2]

---

2. Relevant circumstances include, but are not limited to: (1) the originating party of each document requested; (2) the parties provided access to each document; (3) the party responsible for the release of each document to third parties; and (4) the voluntariness (or lack thereof) of the release. We note that the release of a draft consent decree, drafted by the federal government and released to the State or MSD (which are not federal government agencies),

In sum, we affirm the order of the District Court granting entry of the consent decree. We vacate the orders of the District Court dismissing the intervenors' 33 U.S.C. § 1251(e) claim and their FOIA cross-claim and remand the case for further proceedings consistent with this opinion.

constitutes a waiver of the "inter-agency or intra-agency memorandum[ ]" exception of 5 U.S.C. § 552(b)(5) (1988). *See Chilivis v. Securities & Exch. Comm'n,* 673 F.2d 1205, 1212 (11th Cir.1982) ("Waiver can occur when communications are disclosed to private individuals or nonfederal agencies."); *Cooper v. Department of Navy,* 594 F.2d 484, 487–88 (5th Cir.) (release of exempted documents to one party in a lawsuit constitutes a waiver of the exemption as to other parties in the lawsuit), *cert. denied,* 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979); *cf. County of Madison v. United States Dep't of Justice,* 641 F.2d 1036, 1039–41 (1st Cir.1981) (holding settlement communications between the federal government and an outside party litigant are not exempt from disclosure); *Mead Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 257–58 (D.C.Cir.1977) (section 552(b)(5) exemption not applicable to a settlement document made available by the United States to an outside party involved in litigation with the government). This result follows from the mandate that "[d]isclosure, not secrecy, is the dominant objective of [FOIA], and [FOIA's] ... exemptions ... are to be narrowly construed." *Davis v. Central Intelligence Agency,* 711 F.2d 858, 861 (8th Cir.1983), *cert. denied,* 465 U.S. 1035, 104 S.Ct. 1307, 79 L.Ed.2d 705 (1984).