Opinion issued October 8, 2009









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00229-CV






ROBERT O'CONOR, JR., Appellant


V.


FROST NATIONAL BANK, Appellee






On Appeal from the 234th District Court

Harris County, Texas

Trial Court Cause No. 2007-19797






MEMORANDUM OPINION


 Appellant, Robert O'Conor, Jr., filed an invasion of privacy counterclaim
against Frost National Bank ("Frost") for the disclosure of his Social Security
Number ("SSN") on financial documents filed as part of Frost's pleadings in its claim
against O'Conor for failure to pay under a promissory note. O'Conor appeals from
the trial court's order granting Frost's traditional and no-evidence motion for
summary judgment and denying his cross-motion for summary judgment on his
counterclaim. In four issues, O'Conor argues that the trial court erred : (1) in
granting Frost's motion for summary judgment because Frost based its motion on
financial privacy arguments as opposed to the personal privacy claim filed by
O'Conor; (2) in granting Frost's summary judgment motion and denying O'Conor's
cross-motion because O'Conor provided evidence on all elements of his claims and
met his burden of proving that Frost's disclosure carried a criminal sanction; (3) in
granting Frost's summary judgment motion and denying his cross-motion because
public policy supports O'Conor's counter-claim; and (4) in granting Frost's summary
judgment motion and denying O'Conor's cross-motion because personal privacy is
a right protected by the United States and Texas Constitutions.

 We affirm.

Background

 On May 23, 2006, O'Conor executed a promissory note in favor of Frost. 
O'Conor's name, address, and full SSN appeared together on the face of this note. 
O'Conor also signed a Notice of Final Agreement that contained his name, address,
and full SSN. On March 29, 2007, Frost filed suit against O'Conor alleging that he
had failed to pay the indebtedness in accordance with the terms of the promissory
note and that Frost had exercised its right to accelerate payment of the promissory
note. Frost's petition requested that the trial court award it the principal sum plus
accrued interest, late fees, pre- and post-judgment interest, and attorney's fees. Frost
attached a copy of the promissory note containing O'Conor's name and SSN to its
original petition without redacting his SSN.

 On July 3, 2007, Frost filed its motion for summary judgment on its claim
against O'Conor for failing to pay the indebtedness under the promissory note. Frost
again attached a copy of the promissory note containing O'Conor's name and SSN
without redacting his SSN. O'Conor filed a response to this motion for summary
judgment on July 23, 2007. In its response to O'Conor's reply, Frost attached the
Notice of Final Agreement document containing O'Conor's name and full SSN.

 On October 2, 2007, O'Conor filed his Second Amended Answer to Frost's
claims on the promissory note, asserting a counterclaim for invasion of privacy. In
his counterclaim, O'Conor asserted

invasion of privacy claims against [Frost] for its publication of [his]
private and statutorily protected federal identification, which is highly
offensive to a reasonable person, is not of legitimate public concern, to
[his] injury and damages by disclosure of protected private information
in violation of law. [Frost's] public dissemination of Defendant's social
security information in its pleadings [is] a criminal violation of the
Social Security Act[, specifically, 42 U.S.C. § 408] and a violation of
the [Texas Business and Commerce Code] § 35.58, which allow such
disclosure only under specific statutory authority or under a court order
of proper jurisdictional authority. [Frost's] actions in disclosing
[O'Conor's] statutorily protected information are a violation of law, as
such was done without either the required legal authority or [O'Conor's]
consent, and in further violation of [O'Conor's] privacy rights under the
U.S. Constitution.


 Also on October 2, 2007, O'Conor filed a cross-motion for summary judgment
on his invasion of privacy counterclaim. O'Conor cited provisions of the Social
Security Act (1) and former section 35.58 of the Texas Business and Commerce Code, (2)
and he also argued that his right to privacy in his SSN was protected by the United
States Constitution. O'Conor also made arguments based on the elements of common
law invasion of privacy. Attached to his motion for summary judgment on his
invasion of privacy claims, O'Conor submitted his own sworn affidavit and that of
Bernard A. Ash, whom O'Conor had designated as an expert witness. On December
10, 2007, Frost filed its response to O'Conor's cross-motion for summary judgment
on his invasion of privacy claims and its written objections to O'Conor's and Ash's
affidavits.

 On October 17, 2007, in an interlocutory order, the trial court granted Frost's
motion for summary judgment against O'Conor on Frost's claims under the
promissory note, (3) leaving pending in the trial court only O'Conor's counterclaim
against Frost and a dispute regarding attorney's fees.

 On November 19, 2007, Frost filed a no-evidence and traditional motion for
summary judgment on O'Conor's invasion of privacy counterclaim, arguing that
O'Conor's claims under the Social Security Act, the Texas Business and Commerce
Code, the Untied States' Constitution, and the common law should be dismissed for
failure to provide any evidence of essential elements and on various traditional
grounds. Frost also argued that O'Conor's claims were not supported by the
Financial Privacy Act or the Federal Privacy Act of 1974, although O'Conor did not
plead or argue these statutes as part of his counterclaim. O'Conor filed his response
to Frost's summary judgment motion on December 10, 2007. O'Conor argued that
the Federal Privacy Act and Federal Financial Privacy Act were not part of his
invasion of privacy counterclaim. O'Conor also reasserted his right to recovery under
the Social Security Act, the Texas Business and Commerce Code, and the common
law. (4)

 On December 31, 2007, the trial court signed an interlocutory order denying
O'Conor's cross-motion for summary judgment on his invasion of privacy claims. 
The trial court signed a second interlocutory order granting Frost's motion for
summary judgment on O'Conor's invasion of privacy counterclaim and ordering that
O'Conor "take nothing on his Counterclaim asserted in this case." The trial court
signed its final judgment on January 16, 2008, again ordering that O'Conor take
nothing on his counterclaim and awarding Frost damages under the promissory note,
accrued interest, fees, pre- and post-judgment interest, costs of court, and attorney's
fees. O'Conor's appeal of the denial of his motion for summary judgment on his
invasion of privacy claim and of the trial court's grant of Frost's motion for summary
judgment on those claims followed.

Standard of Review

 We review a trial court's grant of summary judgment de novo. Provident Life
& Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). When a party moves
for both a traditional and a no-evidence summary judgment, we first review the trial
court's summary judgment under the no-evidence standard of Texas Rule of Civil
Procedure 166a(i). Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
If the no-evidence summary judgment was properly granted, we do not reach
arguments under the traditional motion for summary judgment. Id.

 To prevail on a no-evidence motion for summary judgment, the movant must
establish that there is no evidence to support an essential element of the non-movant's
claim. Tex. R. Civ. P. 166a(i); see Flameout Design & Fabrication, Inc. v. Pennzoil
Caspain Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st Dist.] 1999, no pet.). 
The burden then shifts to the non-movant to present evidence raising a genuine issue
of material fact as to the elements specified in the motion. Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006). "The trial court must grant the motion
unless the non-movant produces more than a scintilla of evidence raising a genuine
issue of material fact on the challenged elements." Flameout Design & Fabrication,
994 S.W.2d at 834. If the evidence brought forward by the non-movant does no more
than create mere surmise or suspicion of a fact, less than a scintilla exists. Forbes,
Inc. v. Granada Bioscis., Inc., 124 S.W.3d 167, 172 (Tex. 2003).

 To prevail on a traditional summary judgment motion, the movant has the
burden of proving that it is entitled to judgment as a matter of law and that there are
no genuine issues of material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900
S.W.2d 339, 341 (Tex. 1995). When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court should
review the summary judgment evidence presented by both sides, determine all
questions presented and render the judgment that the trial court should have rendered. 
Tex. Workers' Comp. Comm'n v. Patient Advocates, 136 S.W.3d 643, 648 (Tex.
2004).

I. Frost's Entitlement to Summary Judgment on Statutory and Common
Law Invasion of Privacy


 In his second issue, O'Conor argues that Frost was not entitled to summary
judgment on his invasion of privacy claims under the federal Social Security Act,
former section 35.58 of the Texas Business and Commerce Code, or the common law.
He argues that he was entitled to summary judgment on all of these claims because
he proved their elements as a matter of law.

A. The Social Security Act Claim

 In the first part of his second issue, O'Conor contends that his appeal of the
trial court's rulings on the motions for summary judgment was "based on the illegal
and unauthorized disclosure of [his] social security number, which is regulated under
several controlling federal statutes, including the Social Security Act." O'Conor
argues that sections 405 and 408 of the Social Security Act are "impliedly pre-emptive" and include "mandatory statutory language." O'Conor contends that the
Social Security Act "specifically identified and limited" usage of SSNs by the states
to administer tax, general public assistance, driver's license or motor vehicle
registration laws, birth certificates, and Food Stamp Act and Federal Crop Insurance
Act programs. See 42 U.S.C.A. §§ 405(c)(2)(C) (West Supp. 2009) (outlining
purposes for which state governments and their subdivisions may use SSNs). He
argues that there are only "two other 'additional purposes' for which states are
allowed access to SSNs: 1) identification of duplicate names for jury selection
purposes, and 2) identification of convicted felons on jury lists." See 42 U.S.C.A. §§
405(c)(2)(E)(ii)(I), (II) (West Supp. 2009) (describing additional purposes for which
state or any political subdivision may use SSNs).

 O'Conor relies on section 405(c)(2)(C)(viii) of the Social Security Act to
support his claim that Frost violated "a very clear prohibition that the statutory
disclosure limitations are mandatory and absolute." Section 405(c)(2)(C)(viii)
provides:

(I) Social security account numbers and related records that are
obtained or maintained by authorized persons pursuant to any
provision of law enacted on or after October 1, 1990, shall be
confidential, and no authorized person shall disclose any such
social security account number or related record.


. . . .


(III) For purposes of this clause, the term "authorized person" means
an officer or employee of the United States, an officer or
employee of any State, political subdivision of a State, or agency
of a State or political subdivision of a State, and any other person
(or officer or employee thereof), who has or had access to social
security account numbers or related records pursuant to any
provision of law enacted on or after October 1, 1990. . . .


42 U.S.C.A. § 405(c)(2)(C)(viii)(I), (III) (West Supp. 2009).

 O'Conor argues that Frost violated section 405(c)(2)(C)(viii) of the Social
Security Act by using his SSN for a different purpose than permitted by the statute
and therefore committed a federal felony under section 408(a)(8) of the Social
Security Act, which states:

In general, whoever . . . discloses, uses, or compels the disclosure of the
social security number of any person in violation of the laws of the
United States . . . shall be guilty of a felony and upon conviction thereof
shall be fined under Title 18 or imprisoned for not more than five years,
or both.


42 U.S.C.A. § 408(a)(8). (5) Frost responds that the provisions of the Social Security
Act cited by O'Conor regulate the use of SSNs by states and political subdivisions
and agencies of the states, not by banks, and are inapplicable in this case. See 42
U.S.C.A. § 405(c)(2)(C).

 We conclude that O'Conor's argument that Frost is liable to him because it
committed a federal felony as defined in the Social Security Act by disclosing his
SSN fails. First, O'Conor has provided no evidence that Frost is an "authorized
person" forbidden by section 405(c)(2)(C)(viii) of the Social Security Act to disclose
any social security account number or related record. See 42 U.S.C.A. §
405(c)(2)(C)(viii). An "authorized person" is "an officer or employee of the United
States, an officer or employee of any State, political subdivision of a State, or agency
of a State or political subdivision of a State, and any other person (or officer or
employee thereof), who has or had access to social security account numbers or
related records pursuant to any provision of law enacted on or after October 1, 1990." 
42 U.S.C.A. § 405(c)(2)(C)(viii)(III). Because Frost is not an officer or employee of
the United States or of any state, agency of a state, or political subdivision of a state,
O'Conor has not shown, and cannot show as a matter of law, that section
405(c)(2)(C)(viii) applies to any action of Frost.

 Second, there is no private right of action under section 408(a)(8) of the Social
Security Act. See Alexander v. Wash. Gas Light Co., 481 F. Supp.2d 16, 33 (D.D.C.
2006) ("42 U.S.C. § 408(a)(8) . . . does not provide a basis for a private civil cause
of action."); Edge v. Prof'l Claims Bureau, Inc., 64 F. Supp.2d 115, 118 (E.D.N.Y.
1999) ("42 U.S.C. § 408(a)(8) . . . is a criminal statute which provides for no civil
remedies."); see also Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146,
1149 (1973) (holding that private citizens lack judicially cognizable interest in
criminal prosecution of another).

 We conclude, therefore, that the trial court did not err in denying O'Conor's
motion for summary judgment and granting Frost's motion for summary judgment on
O'Conor's claims under the Social Security Act. See Tex. R. Civ. P. 166a(i) (stating
movant in no-evidence motion for summary judgment must establish that "there is no
evidence of one or more essential elements of a claim"); Flameout Design &
Fabrication, 994 S.W.2d at 834.

 We overrule O'Conor's second issue as it relates to his claims under sections
405(c)(2)(C)(viii) and 408(a)(8) of the Social Security Act. Because these issues are
dispositive of O'Conor's claims under the Social Security Act, we need not address
his other arguments related to that Act. See Ford Motor Co., 135 S.W.3d at 600
(holding that we do not reach arguments under traditional summary judgment motion
if no-evidence summary judgment was properly granted); F.M. Props. Operating Co.
v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000) (holding that reviewing court must
affirm summary judgment if any of summary judgment grounds is meritorious).

B. The Texas Business and Commerce Code Claim


 In the second part of his second issue, O'Conor claims that Frost violated
former section 35.58 of the Texas Business and Commerce Code. As part of the
state's continuing statutory revision program, designed to revise the general and
permanent statutory law without substantive change, section 35.58 was repealed
effective April 1, 2009 and replaced with sections 501.001 and 501.002. Act of May
15, 2007, 80th Leg., R.S., ch. 885, § 2.47(a)(1), 2007 Tex. Gen. Laws 2082 (current
version at Tex. Bus. & Com. Code Ann. § 501.001-501.002 (Vernon 2009)). 
Former section 35.58(a)(1), like current section 501.001, provided, "A person, other
than a government or a governmental subdivision or agency, may not . . . intentionally
communicate or otherwise make available to the general public an individual's social
security number." Act of June 1, 2003, 78th Leg., R.S., ch. 1326, § 6, 2003 Tex. Gen.
Laws 5008 (current version at Tex. Bus. & Com. Code Ann. § 501.001(a)). As both
parties point out, this section also included an exception for "court records." See id.
(current version at Tex. Bus. & Com. Code Ann. § 501.001(e)(4)) ("This section
does not apply to . . . court records . . . .").

 O'Conor claims that Frost violated section 501.001(a) of the Business and
Commerce Code by attaching documents including his name, address, and full SSN
to pleadings and filings submitted to the trial court on three separate occasions. 
However, O'Conor has failed to present any evidence that these filings were not
"court records" and therefore exempt from the provisions of section 501.001(a). (6)

 O'Conor cites section 405 of the Social Security Act and argues that "the 'court
records' exception must necessarily be construed under the federal statute under
which there are two 'additional uses' for states regarding social security numbers that
relate to 'courts,' [both having] to do with integrity of the jury selection process." 
However, as we have already stated, section 405(c) of the Social Security Act applies
to the use of SSNs by state governments and their political subdivisions and agencies,
and O'Conor failed to present any evidence that those sections apply to Frost as a
private entity. (7)

 We conclude that the trial court did not err in denying O'Conor's motion for
summary judgment and granting Frost's motion for summary judgment on O'Conor's
claims under former section 35.58 of the Business and Commerce Code.

 We overrule O'Conor's second issue as it relates to his claims under former
section 35.58 of the Business and Commerce Code.

C. Common Law Invasion of Privacy

 In the third part of his second issue, O'Conor argues that the trial court erred
in denying his motion for summary judgment and granting Frost's motion for
summary judgment because he provided evidence on each element of his common
law invasion of privacy counterclaim.

 A common law right to privacy exists under Texas law. Billings v. Atkinson,
489 S.W.2d 858, 860 (Tex.1973). To succeed on an invasion of privacy claim, a
plaintiff must show an intentional intrusion, physically or otherwise, upon the
solitude, seclusion, or private affairs of another, which would be highly offensive to
an reasonable person. Valenzuela v. Aquino, 853 S.W.2d 512, 513 (Tex. 1993). 
Additionally, courts have required that the intrusion be unreasonable, unjustified, or
unwarranted. Farrington v. Sysco Food Servs., Inc., 865 S.W.2d 247, 253 (Tex.
App.--Houston [1st Dist.] 1993, writ denied) (citing Billings, 489 S.W.2d at 860). 
This type of invasion of privacy is generally associated with either a physical
invasion of a person's property or eavesdropping on another's conversation with the
aid of wiretaps, microphones, or spying. Vaughn v. Drennon, 202 S.W.3d 308, 320
(Tex. App.--Tyler 2006, pet. denied); Wilhite v. H.E. Butt Co., 812 S.W.2d 1, 6 (Tex.
App.--Corpus Christi 1991, no writ).

 O'Conor has failed to provide any evidence that Frost intentionally intruded
into his privacy in the way typically associated with this tort. Neither party disputes
that O'Conor voluntarily provided Frost with his personal information in the course
of their financial dealings. Furthermore, Frost used the personal information
provided by O'Conor to enforce its rights under the promissory note. This act cannot
be considered unreasonable, unjustified, or unwarranted. See Farrington, 865 S.W.2d
at 253.

 We conclude that the trial court did not err in denying O'Conor's motion for
summary judgment and granting Frost's motion for summary judgment on this claim.

 We overrule the remainder of O'Conor's second issue. (8)

II. Public Policy

 In his third issue, O'Conor argues that public policy supports his invasion of
privacy claim against Frost. Specifically, O'Conor argues that the affidavit of
Bernard A. Ash, his designated expert witness, and two congressional hearing reports
by the Government Accounting Office (GAO) provide a public policy basis for
supporting his invasion of privacy claim against Frost.

 In his affidavit, Ash states that three of Frost's filings "have attached
[O'Conor's] name, address, and social security number, which is a violation of both
state and federal laws." Ash also states,

In my experience in law enforcement and security planning the
knowledge of a person's correct name and attendant social security
number expedites access to other personal information, which is used in
locating and tracking particular individuals and their assets. The Social
Security Administration has strict control of the assigned numbers,
which follow a person for his lifetime.


Ash provides various websites offered through the Social Security Administration
providing information regarding the general confidentiality of SSNs and social
security records.

 Assuming without deciding that Ash's affidavit is competent summary
judgment evidence, (9) it does not provide any evidence that Frost can be held liable to
O'Conor under any theories pled in the counterclaim. Furthermore, GAO reports do
not provide an independent right to recovery for disclosure of an SSN in court filings. 
As we have already discussed, the specific statutory and common law bases that
O'Conor has cited do not afford him a right to recover in this case.

 We overrule O'Conor's third issue.

III. Constitutional Protection of Privacy

 In his fourth issue, O'Conor argues that the United States Constitution protects
the privacy of SSNs. O'Conor cites Sherman v. United States Deptartment of Army,
to support his contention. 244 F.3d 357, 362 (5th Cir. 2001).

 Sherman involved an action to compel the Army to disclose documents under
the Freedom of Information Act ("FOIA") relating to service awards, including SSNs
of service personnel. The Fifth Circuit held that only the "individual whose
informational privacy interests are protected . . . can effect a waiver of those privacy
interests when they are threatened by an FOIA request" and that such a waiver had
not occurred. Id. The Fifth Circuit addressed concerns about identity theft:

[W]e are comfortable measuring the scope of the privacy interest in a
SSN in terms of the dire consequences of identity theft and other forms
of fraud which are associated with SSN disclosure. That said, we also
believe that "[t]o weigh properly the privacy interest involved, the dire
consequences of identity theft must be discounted by the probability of
its occurrence." [In re Crawford, 194 F.3d 954, 959 (9th Cir. 1999)]. 
Thus, the relatively low risk of identity theft may sufficiently diminish
the privacy interest in SSNs to warrant their disclosure where a strong
public interest in disclosure exists. See id. (holding requirement that
individuals filing for bankruptcy submit their social security numbers
with bankruptcy application is warranted by government's strong public
interest in preventing bankruptcy fraud and facilitating transparent
bankruptcy process). Nevertheless, we recognize that individual citizens
have a substantial informational privacy right to limit the disclosure of
their SSNs, and consequently reduce the risk that they will be affected
by various identity fraud crimes.


Id. at 365-66.

 The requested disclosure in Sherman is distinguishable from the disclosure
here. O'Conor voluntarily gave his SSN to Frost in the course of their financial
dealings, and Frost used that number to collect the debt incurred by O'Conor. 
O'Conor has not cited any case law or other authority supporting a cause of action
like the counterclaim he pled against Frost. Rather, the case law O'Conor relies on
supports the argument that the provisions of SSNs in personal loan transactions, as
in bankruptcy filings, may be warranted by the government's strong public interest
in preventing bank fraud and facilitating the banking process. (10)

 We overrule O'Conor's fourth issue.

IV. Financial Privacy

 In his first issue, O'Conor argues that the trial court erred in granting Frost's
summary judgment motion based on federal financial privacy laws and the Federal
Privacy Act of 1974 because O'Conor alleged no such grounds in his counterclaim. 
Because other meritorious grounds support the trial court's take-nothing judgment on
O'Conor's invasion of privacy counterclaim, we do not need to address this argument. 
See F.M. Props. Operating Co., 22 S.W.3d at 872 (holding that reviewing court must
affirm summary judgment if any of summary judgment grounds is meritorious).

 We conclude that the trial court did not err in rendering a take-nothing
judgment against O'Conor on his invasion of privacy counterclaim.

 We overrule O'Conor's first issue.






Conclusion

 We affirm the judgment of the trial court.






 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.

1. 42 U.S.C. §§ 301-1397mm (West 2003 & Supp. 2009).
2. Section 35.58 of the Texas Business and Commerce Code has been recodified, and
those provision can now be found in sections 501.001 and 501.002 of the Texas
Business and Commerce Code.
3. O'Conor does not challenge this ruling on appeal.
4. O'Conor's respose to Frost's no-evidence motion for summary judgment did not
reassert any arguments under the United States Constitution.
5. O'Conor also makes references to an opinion of the Texas Attorney General
recognizing that "disclosure of a SSN in violation of federal law is a felony." Op.
Tex. Att'y Gen. No. GA-0519 (2007). O'Conor argues that the attorney general
opinion explains the prerequisites for private entites' disclosure of SSNs--the
adoption of a privacy policy and maintenance of the confidentiality and security of a
SSN disclosed to the person. See Tex. Bus. & Com. Code Ann. § 501.052 (Vernon
2009) (stating person cannot require individual to disclose SSN unless person has
adopted privacy policy and met other conditions). O'Conor asserts that Frost has
blatantly violated this section.

 O'Conor also cites amendments to the Texas Public Information Act governing
the use of SSNs by governmental bodies. O'Conor contends that "the Texas
Legislature amended the Texas Public Information Act to protect those acting for a
'governmental body, including by a district or county clerk,' from criminal and/or
civil liability for social security numbers in government records." O'Conor further
"notes that the amended statute retained the exception from public disclosure of social
security numbers under the Open Records Act and also included recognition of the
federal preemption presented herein in the amendment to the Property Code to
eliminate the publication of social security numbers in property records." See Tex.
Gov't Code Ann. § 552.147(a) (Vernon Supp. 2008) (regarding public information
and SSNs: "The social security number of a living person is excepted from the
[requirement that public information be available to the public during normal business
hours of the governmental body], but is not confidential under this section and this
section does not make the social security number of a living person confidential under
another provision of this chapter or other law."); Tex. Prop. Code Ann. § 11.008(i)
(Vernon Supp. 2008) (regarding "Personal Information in Real Property Records,"
"To the extent that federal law conflicts with this section, an instrument must contain
the information required by and must be filed in a manner that complies with federal
law.").

 However, O'Conor did not refer to any of these theories for recovery in his
pleading or in his arguments before the trial court. We will not consider them for the
first time on appeal. See Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993) ("As
a rule, a claim . . . must have been asserted in the trial court in order to be raised on
appeal."); see also Tex. R. Civ. P. 301 (judgment shall conform to the pleadings).
6. O'Conor argues that the Social Security Act preempts any state statutes providing for
a different use of SSNs. As we have already discussed, the sections of the Social
Security Act that O'Conor relies on do not apply to his claims.
7. O'Conor also argues that the federal Judicial Conference Committee's
recommendations on privacy issues provided a basis for the trial court to grant his
motion for summary judgment on invasion of privacy grounds and to deny Frost's
motion. However, O'Conor has presented no evidence or authority that judicial
recommendations support a judgment against Frost.
8. O'Conor also argues that the publication of his SSN was not necessary or relevant to
Frost's claims on the promissory note. We construe this as an argument that his entire
SSN was not necessary and could have been redacted. O'Conor waived this argument
by not pursuing such a remedy in the trial court by requesting that the court record be
sealed or that the filings be redacted or providing the trial court some other kind of
notice of the specific grounds of his complaint. See Tex. R. App. P. 33.1 (requiring
timely request, objection, or motion stating grounds for ruling complaining party is
seeking in order to preserve error for appellate review).
9. Frost objected to Ash's affidavit in the trial court, but the trial court never ruled on its
objections. Because we determine that Ash's affidavit does not contain any evidence
in support of O'Conor's claim, we do not address Frost's arguments on its
admissibility.
10. We emphasize that O'Conor could have moved to have his social security number
redacted or the pleadings sealed if he was concerned about identity theft, but he did
neither.